**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Paul Dodds FINEFROCK, Defendant-Appellant.**

**No. 80–2145.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Oct. 21, 1981.

Decided Jan. 25, 1982.

B. J. Rothbaum, Oklahoma City, Okl. (G. Phil Harney and William J. Skepnek, Oklahoma City, Okl., on brief), of Linn, Helms, Kirk & Burkett, Oklahoma City, Okl., for defendant-appellant.

John R. Osgood, Asst. U. S. Atty. (David L. Russell, U. S. Atty., and Frank Michael Ringer, Asst. U. S. Atty., Oklahoma City, Okl., on brief), for plaintiff-appellee.

Before DOYLE, LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

 Paul Dodds Finefrock appeals from his conviction on five counts for importing and possessing marijuana in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 952, and 963. The issues on appeal all relate to whether the district court correctly upheld the warrantless search and seizure of Finefrock's airplane and its contents. Finefrock argues that the district court incorrectly viewed the evidence in a light most favorable to the government; further, that to justify the search the court should have required the government to show that exigent circumstances were present.[1]

At about 3:30 a. m. on July 10, 1980, Finefrock landed his airplane at an airport in Hobart, Oklahoma. Suspecting that Finefrock was carrying drugs, several narcotics agents were waiting for him. After Finefrock left his plane and drove toward the airport terminal, one agent approached the plane and, using a flashlight, allegedly observed several large packages inside the plane. At the suppression hearing this agent testified that he saw what he believed was marijuana residue on the plane's window sill and marijuana stems and leaves protruding from tears in the packages. After this sighting he directed the other officers to arrest Finefrock. While an agent entered the aircraft shortly after the arrest, the officers did not search the plane or seize its contents until about 7 a. m., two hours after they had taken Finefrock to the county jail, when the agents returned to the plane to inventory the marijuana and verify its identity. The officers conducted the search and seizure without warrants.

 The district court denied Finefrock's motion to suppress all evidence the agents obtained by means of their search and seizure. The parties then signed a stipulation reciting what the government's evidence would be at trial, and agreed that the district court could determine the defendant's guilt or innocence on the basis of this stipulation, preserving for this Court's review the lawfulness of the search and seizure.

Finefrock argues that the district court, in upholding this warrantless search and seizure, incorrectly evaluated the evidence in a light most favorable to the government. Whenever a defendant challenges a warrantless search or seizure, the government carries the burden of justifying the agent's actions. *Chimel v. California,* 395 U.S. 752, 762, 89 S.Ct. 2034, 2039, 23 L.Ed.2d 685 (1969). It must show that the agents had probable cause for their actions, and it must prove probable cause by a preponderance of the evidence. *See United States v. Matlock,* 415 U.S. 164, 177–78 n.14, 94 S.Ct. 988, 996, 39 L.Ed.2d 242 (1974); *Lego v. Twomey,* 404 U.S. 477, 488–89, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972).

The government attempts to justify the warrantless search under the automobile exception that we held applicable to searches of airplanes in *United States v. Gooch,* 603 F.2d 122 (10th Cir. 1979), and *United States v. Sigal,* 500 F.2d 1118 (10th Cir.), *cert. denied,* 419 U.S. 954, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974).

 Any application of the automobile-airplane exception depends upon whether the officer saw marijuana or items he reasonably believed to be marijuana through the window of that airplane. Therefore, a crucial issue is the credibility of the officers' testimony, and the standard of proof the court applied at the suppression hearing is quite important. After hearing the testimony and just before the judge ruled, the prosecutor commented, "I think the Court must take into consideration the evidence in the light most favorable to the Government

---

1. At oral argument the government asked us to apply the concurrent sentence doctrine and decline to consider the issues Finefrock raises. That doctrine applies, however, only when our consideration of a defendant's appeal would not materially alter the defendant's punish-ment. The district court here fined Finefrock $5,000 on each of five counts. Since Finefrock's success in this appeal could reduce his fine, the concurrent sentence doctrine does not apply.

at this particular juncture." R. IV, 68. A few moments later, the court denied Finefrock's motion to suppress and said:

> "I think that under the totality of the circumstances and *accepting the conflict of the testimony in a light favorable to the Government in this regard*, that having the ability to observe torn bags of marijuana . . . put [the agents] on probable cause to conduct—to effect the arrest of the Defendant and to conduct the search herein.
>
> "I will confess that I'm—I don't find it a particularly easy case."

R. IV, at 69. (Emphasis added).

■ At oral argument the government urged that these comments of the judge should not be construed as indicating the judge applied the admittedly erroneous legal test of viewing the evidence in a light most favorable to the government. We do not agree. In the context of the prosecutor's remark immediately prior to the ruling, the only fair reading is that the judge applied the wrong test. The court should have fairly and evenhandedly weighed all the evidence and required the government to prove probable cause by a preponderance of the evidence.

■ The government next contends that we should apply a clearly erroneous standard to the district court's finding of probable cause, and, as a result, affirm the finding. Although normally we apply a clearly erroneous standard to a trial court's factual determinations at a suppression hearing, *see United States v. Axselle*, 604 F.2d 1330, 1335 (10th Cir. 1979), we do so only when the district court properly imposed the burden of proof and weighed the evidence using the preponderance of the evidence standard. Because the district court here did not use the correct standard in weighing the evidence, we do not employ a clearly erroneous standard.

■ Alternatively, the government argues that because the evidence is so overwhelming in its favor, we should independently find that the agents had probable cause. To the contrary, referring to whether the evidence should be suppressed, the district court stated, "I don't find it a particularly easy case." Finefrock presented conflicting testimony that, if believed, would have undermined the government's evidence. We must reverse, therefore, and remand this case to the district court to redetermine, applying the preponderance standard without viewing the evidence in a light favorable to either side, whether the agents had probable cause to search and seize the airplane and its contents.

■ Finefrock's second argument is that the government, to justify the agents' search and seizure, should have had to produce evidence that exigent circumstances were present. The court made no finding on the issue, stating that "exigent circumstances . . . just sort of seems to go out the window where automobiles and airplanes are concerned." R. IV, 65.

The Supreme Court continues to demand "exigent circumstances" to justify a search under the automobile exception. *E.g., Coolidge v. New Hampshire*, 403 U.S. 443, 460–62, 91 S.Ct. 2022, 2034–2035, 29 L.Ed.2d 564 (1971). Nevertheless, it appears to find exigent circumstances as a matter of law whenever an automobile is seized incident to a lawful arrest on a public highway, and after seizing the automobile, the police can postpone the search until later. *See Chambers v. Moroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). We cannot distinguish the instant case from *Chambers*, which upheld a warrantless search of an automobile several hours after police arrested its driver on the public highway. The Court's opinion in *Coolidge* explains,

> "It is true that the actual search of the automobile in *Chambers* was made at the police station many hours after the car had been stopped on the highway, when the car was no longer movable, any 'exigent circumstances' had passed, and, for all the record shows, there was a magistrate easily available. Nonetheless, the analogy to this case is misleading. The rationale of *Chambers* is that *given* a justified initial intrusion, there is little difference between a search on the open

highway and a later search at the station."

403 U.S. at 463 n.20, 91 S.Ct. at 2036 (emphasis in original). *See id.* at 523, 91 S.Ct. at 2066 (White, J., separate opinion) ("some expedition in completing the searches" is required in the *Chambers*-type situation).

The same rationale must be applied to a search of Finefrock's airplane, which was mobile and parked at a public airport. Our discussion in *Gooch* is fully applicable to the case before us.

"This Court has previously held the rule of *Chambers* applicable to airplanes as well as to automobiles. *United States v. Sigal*, 500 F.2d 1118 (10th Cir.), *cert. denied*, 419 U.S. 954, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974). Although a parked airplane whose occupants are removed is arguably less mobile than a similarly situated automobile—given the relatively few persons capable of piloting an airplane—an airplane is even more mobile in terms of its ability to cover great distances in a short time and its capacity to move without being restricted to discrete roadways. In terms of mobility, then, airplanes are logically encompassed within the *Chambers* doctrine.

"Insofar as the *Chambers* rule turns on the reduced expectation of privacy one has in his automobile, most of what was said in *Chadwick* [*United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)] concerning automobiles applies to airplanes as well. Thus, an airplane's 'function is transportation and it seldom serves as one's residence or as the repository of personal effects.' 433 U.S. at 12, 97 S.Ct. at 2484. Although it does not travel 'public thoroughfares where both its occupants and its contents are in plain view,' *id.*, it ordinarily lands at airports open to the public where its occupants and contents are similarly visible. The pervasive regulation of automobiles and their drivers, *see id.* at 12–13, 97 S.Ct. 2476, is even exceeded by the regulation of airplanes and their pilots. Moreover, such privacy expectation as one may reasonably have in the contents of his airplane in other circumstances is diminished when, as in this case, those contents consist of cargo which is to be unloaded at a public airport and which is within easy view through the airplane's door."

603 F.2d at 124–25.

Thus we hold that on remand, while the trial court must find whether the initial seizure of the airplane was justified, it need not make a separate finding whether exigent circumstances were present at the time of the subsequent search of the aircraft and seizure of the marijuana. We reverse and remand this case to the district court for further proceedings consistent herewith.