**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 21 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LATONIA EDNA BENSON,

    Defendant - Appellant.

No. 97-3354
(D.C. No. 97-10051-MLB)
(District of Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **KELLY** and **LUCERO**, Circuit Judges.

---

Latonia Benson appeals her conviction and sentencing for conspiracy to

distribute marijuana and methamphetamine, and possession with intent to

distribute. She challenges the denial of a motion to suppress marijuana and

methamphetamine seized by the police. She also claims entitlement to a sentence

reduction as a minor participant in the drug conspiracy. We exercise jurisdiction

---

[*]  This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

pursuant to 28 U.S.C. § 1291, and summarily affirm the district court's disposition of these arguments.

## I

Benson was indicted for conspiracy to distribute marijuana and methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846; possession of 267 grams of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and possession of 41 pounds of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. After unsuccessfully moving to suppress drug and firearm evidence allegedly obtained in violation of her Fourth Amendment rights, she was convicted on all counts and sentenced to 151 months imprisonment. She now challenges the denial of her motion to suppress on two grounds: first, that her detention following a traffic stop by Trooper Scott Mayfield was unreasonable; second, that her consent to a search of the vehicle she was driving at the time was obtained by coercion. In addition, she argues that the district court erred in its refusal to reduce her sentence on the grounds that she was no more than a minor participant in a drug-trafficking scheme. We consider, and reject, these arguments.

## II

After witnessing Benson's attempt an illegal U-turn on an interstate highway in Wichita, Trooper Mayfield stopped her car. Although Benson did

provide her name, address, and Oklahoma driver's license number, she was neither able to produce a driver's license or valid identification, nor explain the purpose of her trip. When Mayfield asked Benson's passenger, Steven B. Speal, for his license, he provided an Illinois license that identified him as Chris McMillan, and informed the trooper they were in Wichita visiting a friend.

A subsequent computer check revealed a valid license for Latonia Benson, but Mayfield was unsure as to whether Benson had correctly identified herself. In addition, the trooper found no record of an Illinois license issued to Chris McMillan. The computer check also revealed that the car was registered not to John Benson, whom Benson claimed owned the car, but to one Joe Paddock. When Trooper Mike Geer arrived to provide assistance, Benson gave Geer a different explanation for the trip—that she and Speal had come to Wichita to shop, visit Silver Dollar City (a seven hour drive from Wichita), and possibly visit a friend.

Mayfield then issued Benson a ticket and asked permission to search the car. Contemporaneously, Geer learned that Speal had lied about his identity, possessed a lengthy criminal record, and had recently been released from jail. Benson ultimately agreed to a vehicle search, during which Mayfield discovered several guns and two garbage bags filled with marijuana. A subsequent inventory search also revealed methamphetamine.

## A

"On appeal from the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous," United States v. Soto-Cervantes, 138 F.3d 1319, 1322 (10th Cir. 1998), and review the evidence in the light most favorable to the government. See United States v. Lambert, 46 F.3d 1064, 1067 (10th Cir. 1995) (citation omitted). When a defendant challenges a warrantless search or seizure, the government bears the burden of proving the validity of an officer's actions. See United States v. Finefrock, 668 F.2d 1168, 1170 (10th Cir. 1982) (citing Chimel v. California, 395 U.S. 752, 762 (1969)).

As an initial matter, we conclude that Benson has established standing to challenge the traffic stop and detention. A driver has standing to challenge a vehicle search if she establishes lawful possession of the vehicle. See United States v. Soto, 988 F.2d 1548, 1552 (10th Cir. 1993). The district court found that "Benson's Fed. R. Evid. 104(a) testimony on the issue of her possession of the [Ford] Torino was unrebutted and therefore credible." United States v. Benson, et al., No. 97-10051-01 & 02, slip op. at 10 (D. Kan. Aug. 1, 1997). At the suppression hearing, Benson testified that Joe Paddock gave her the keys to his car, as well as permission to use the vehicle. The district court found that

Paddock, in whose name the vehicle was registered, let Benson use the car without restriction.[1] We see no reason to question these findings.

**B**

We also agree that Mayfield properly detained Benson. "The government has the burden of demonstrating 'that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.'" United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993) (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)). We review de novo a finding concerning the existence of reasonable suspicion at the time of a seizure. See Lambert, 46 F.3d at 1067.

A traffic stop is analogous to an investigative detention. To be legal, the stop must be justified at its inception and the subsequent detention "reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, 392 U.S. 1, 20 (1968). Under these principles

> an investigative detention may be expanded beyond its original
> purpose . . . if during the initial stop the detaining officer acquires
> "reasonable suspicion," of criminal activity, that is to say the officer
> must acquire a "particularized and objective basis for suspecting the
> particular person stopped of criminal activity.". . . We have noted
> that "[o]ne recurring factor supporting a finding of reasonable

---

[1] At the suppression hearing, Benson conceded that government counsel stated at the bond hearing that Paddock denied allowing her to use the vehicle. This report did not cause the district court to discredit Benson's assertion that she had permission from Paddock to drive the car. We agree with the district court.

suspicion. . . is the inability of a defendant to provide proof that he is entitled to operate the vehicle he is driving."

United States v. Villa-Chaparro, 115 F.3d 797, 801-802 (10th Cir. 1997) (internal citations omitted). Here, Benson's attempted illegal U-turn justified the initial stop. Mayfield properly continued the stop in light of Benson's lack of license or identification, Speal's unverifiable license, the vehicle's uncertain ownership, the couple's inconsistent explanations for the trip, the unusually early hour, and the chosen route—one along which drugs and guns are often transported.

## C

Finally, we see no error in the district court's conclusion that Benson voluntarily consented to the vehicle search.[2] Under the applicable totality of the circumstances test, see United States v. McKneely, 6 F.3d 1447, 1453 (10th Cir. 1993) (citation omitted), the record supports a conclusion that Benson's consent was voluntary. She was neither threatened with nor placed under arrest. She was neither handcuffed nor physically restrained. None of the officers displayed a weapon. Although Mayfield persistently sought Benson's consent, he addressed her in a polite, non-threatening way. Such persistence constituted a reasonable effort on his part to obtain a clear answer.[3] While Mayfield failed to tell Benson

---

[2] Consequently, we do not address the government's argument as to inevitable discovery.

[3] Many of Benson's responses appear to have been an effort to dispel suspicion and dissuade Mayfield from the search, rather than an actual denial of consent.

she could refuse consent, her refusal to sign the release form indicates that Mayfield did not overwhelm her will, and suggests she rationally sought to protect her option to challenge the search later. Finally, the consent given was sufficiently specific.

## IV

Benson also challenges the sentencing court's refusal to award her a two-level adjustment for minor participation in the drug trafficking scheme. "[A] minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2(b), Application Note 3. A party who seeks a sentence reduction bears the burden of proving entitlement to the reduction by a preponderance of the evidence, see United States v. Kirk, 894 F.2d 1162, 1164 (10th Cir. 1990), and the sentencing court's conclusion that Benson failed to meet this burden is a factual determination that we review for clear error, see United States v. Smith, 131 F.3d 1392, 1399 (10th Cir. 1997) (citing United States v. Williamson, 53 F.3d 1500, 1523 (10th Cir. 1995)).

No such error is apparent from the record. The trial court found that Benson provided Speal with a loaded .45 caliber handgun, and it credited the government's assessment that Benson "lied to the officers" and "covered for [Speal]." See V R. at 31. Benson misrepresented the purpose of the Wichita trip

to the police, referred to Speal by his alias, and lied to conceal the presence of guns and drugs in the car. In addition, Benson supplied and drove the vehicle, providing an essential service to Speal, whose license was suspended.

**AFFIRMED**.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge